IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| TERESA A. NELSON, | ) | Civil No.: 6:15-cv-01775-JE |
| | ) | |
| Plaintiff, | ) | FINDINGS & |
| v. | ) | RECOMMENDATION |
| | ) | |
| NANCY A. BERRYHILL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Katherine L. Eitenmiller
William Critchlow
Harder, Wells, Baron & Manning, P.C.
474 Willamette St., Suite 200
Eugene, OR 97401

       Attorneys for Plaintiff

Billy J. Williams, U.S. Attorney
Janice E. Hébert, Asst. U.S. Attorney
1000 S.W. 3rd Avenue, Suite 600
Portland, OR 97204-2902

Brett E. Eckleberg
Special Assistant U.S. Attorney
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900 M/S 221A
Seattle, WA 98104-7075

       Attorneys for Defendant

---

[1] Nancy A. Berryhill replaced Carolyn W. Colvin as Acting Commissioner of Social Security on January 20, 2017, and is therefore substituted as the Defendant in this action pursuant to Fed. R. Civ. Pro. 25(d).

JELDERKS, Magistrate Judge:

Teresa A. Nelson ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1381a seeking judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act ("the Act"). For the reasons that follow, the Commissioner's decision should be reversed and this case remanded for further proceedings.

## Procedural Background

Plaintiff filed her application for DIB on June 27, 2011, alleging disability beginning December 25, 2008. Tr. 99, 100. After Plaintiff's claim was denied initially and on reconsideration, a hearing was convened on October 22, 2013, before Administrative Law Judge ("ALJ") Marilyn S. Mauer. Tr. 64-98. A second hearing was subsequently convened on July 24, 2014 in order to elicit further testimony from Plaintiff and a vocational expert ("VE"). Tr. 47-61. The ALJ issued a decision on July 28, 2014 finding Plaintiff not disabled. Tr. 21-32. The decision became the final decision of the Commissioner on July 27, 2015, when the Appeals Council denied Plaintiff's request for review. Tr. 1-4. Plaintiff now appeals to this court for review of the Commissioner's final decision.

## Background

Born July 26, 1961 Plaintiff was 47 years old on the alleged onset date. Tr. 100. Plaintiff is a high school graduate and earned an associate's degree as a Licensed Practical Nurse ("LPN"). Tr. 73, 122. She has past relevant work as a certified nurse aide, LPN, office clerk, home health aide, and home companion. Tr. 51-52, 97. Plaintiff alleges disability due to bipolar disorder, depression, anxiety, and neck pain. Tr. 100.

**Disability Analysis**

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520. The five step sequential inquiry is summarized below, as described in <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

<u>Step One.</u> The Commissioner determines whether the claimant is engaged in substantial gainful activity. A claimant who is engaged in such activity is not disabled. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under step two. 20 C.F.R. § 404.1520(b).

<u>Step Two.</u> The Commissioner determines whether the claimant has one or more severe impairments. A claimant who does not have any such impairment is not disabled. If the claimant has one or more severe impairment(s), the Commissioner proceeds to evaluate the claimant's case under step three. 20 C.F.R. § 404.1520(c).

<u>Step Three.</u> Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the presumptively disabling impairments listed in the Social Security Administration ("SSA") regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. A claimant who has an impairment that meets a listing is presumed disabled under the Act. If the claimant's impairment does not meet or equal an impairment listed in the listings, the Commissioner's evaluation of the claimant's case proceeds under step four. 20 C.F.R. § 404.1520(d).

<u>Step Four.</u> The Commissioner determines whether the claimant is able to perform work he or she has done in the past. A claimant who can perform past relevant work is not disabled. If the claimant demonstrates he or she cannot do past relevant work, the Commissioner's evaluation of claimant's case proceeds under step five. 20 C.F.R. § 404.1520(f).

Step Five. The Commissioner determines whether the claimant is able to do any other work. A claimant who cannot perform other work is disabled. If the Commissioner finds claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that claimant is able to do. The Commissioner may satisfy this burden through the testimony of a vocational expert ("VE"), or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant is able to do, the claimant is not disabled. If the Commissioner does not meet the burden, the claimant is disabled. 20 C.F.R. § 404.1520(g)(1).

At steps one through four of the sequential inquiry, the burden of proof is on the claimant. Tackett, 180 F.3d at 1098. At step five, the burden shifts to the Commissioner to show the claimant can perform jobs that exist in significant numbers in the national economy. Id.

### The ALJ's Decision

At the first step of the disability analysis, the ALJ found Plaintiff met the insured status requirements through December 31, 2013, and had not engaged in substantial gainful activity since the alleged onset date, December 25, 2008. Tr. 23.

At the second step, the ALJ found Plaintiff had the following severe impairments: cervical degenerative disc disease with left-sided radiculopathy; mild lumbar degenerative disc disease; post-traumatic stress disorder ("PTSD"), panic disorder without agoraphobia; personality disorder NOS (not otherwise specified); and bipolar I disorder. Tr. 23. The ALJ additionally noted that Plaintiff's history of drug and alcohol use was not material. Id.

At the third step, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment set out in the Listings, 20 C.F.R. Part 404, Subpart P, App. 1. Tr. 23-24.

Before proceeding to the fourth step, the ALJ assessed Plaintiff's residual functional capacity ("RFC"). She found Plaintiff retained the capacity to:

> [P]erform a range of light work . . . . She can lift 20 pounds occasionally and 10 pounds frequently. She can sit, stand and walk each 6 hours in an 8-hour day for a combined total of 8 hours of activity. She can occasionally climb ladders, ropes and scaffolds and occasionally crawl. She can frequently climb ramps and stairs, balance, stoop, crouch and kneel. She can occasionally reach overhead. She can understand, remember and carry out simple instructions in a setting with no public contact and no teamwork assignments. She would do best in a setting with a supervisor who can provide constructive criticism in a non-confrontational manner, who has sufficient skill to adapt to the personality of the supervisee, and who is able to provide positive feedback, when applicable.

Tr. 25.

At the fourth step of the disability analysis, the ALJ found Plaintiff was not able to perform any past relevant work. Tr. 30.

At the fifth step of the analysis, the ALJ found Plaintiff retained the capacity to perform the following occupations which exist in significant numbers in the national economy: mail clerk, office helper, and assembler of small products I. Tr. 31.

Accordingly, the ALJ found Plaintiff was not disabled within the meaning of the Act from the alleged onset date, December 25, 2008, through the date last insured, December 31, 2013. Tr. 31-32.

## **Standard of Review**

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can

be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Claimants bear the initial burden of establishing disability. <u>Roberts v. Shalala</u>, 66 F.3d 179, 182 (9th Cir. 1995), <u>cert. denied</u>, 517 U.S. 1122 (1996). The Commissioner bears the burden of developing the record, <u>DeLorme v. Sullivan</u>, 924 F.2d 841, 849 (9th Cir. 1991), and bears the burden of establishing that a claimant can perform "other work" at step five of the disability analysis process. <u>Tackett</u>, 180 F.3d at 1098.

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); <u>see also</u> <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Andrews</u>, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. <u>Martinez v. Heckler</u>, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation." <u>Andrews</u>, 53 F.3d at 1039-40.

## Discussion

Plaintiff raises the following issues on appeal: whether the ALJ properly evaluated the testimony provided by (1) Plaintiff regarding her symptom allegations, (2) lay witness James Nelson; the medical opinions of (3) David R. Tuhn, Psy.D; and (4) whether the ALJ properly formulated an RFC, and subsequently (5) carried the burden of proof at step five of the sequential analysis.

I.     <u>Symptom Testimony</u>

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." Pursuant to Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029 (Mar. 16, 2016) (superseding SSR 96-7p, 1996 WL 374186 (July 2, 1996)), the ALJ is no longer tasked with making an overarching credibility determination, and must assess instead whether a claimant's subjective symptom statements are consistent with the record as a whole. The ALJ's decision in this case was issued well before SSR 16-3p became effective and there is an absence of binding precedent interpreting this new ruling or addressing whether it applies retroactively. <u>Compare</u> <u>Ashlock v. Colvin</u>, 2016 WL 3438490, at *5 n.1 (W.D. Wash. June 22, 2016) (declining to apply SSR 16-3p to an ALJ decision issued prior to the effective date), <u>with</u> <u>Lockwood v. Colvin</u>, 2016 WL 2622325, at *3 n.1 (N.D. Ill. May 9, 2016) (applying SSR 16-3p retrospectively to a 2013 ALJ decision).

However, SSR 16-3p is a clarification of sub-regulatory policy, rather than a new policy. SSR 16–3p, at *1; <u>also</u> <u>compare</u> SSR 16-3p with SSR 96-7p (both policies set forth a two-step process to be followed in evaluating a claimant's testimony and contain the same factors to be considered in determining the intensity and persistence of a claimant's symptoms). In <u>Andre v. Colvin</u>, 6:14-cv-02009-JE (D. Or. Oct. 13, 2016) I recently concluded that, for this reason, retroactive application of the new SSR is appropriate. <u>See</u> <u>Smolen v. Chater</u>, 80 F.3d 1274, 1281 n.1 (9th Cir. 1996) ("We need not decide the issue of retroactivity [as to revised regulations] because the new regulations are consistent with the Commissioner's prior policies and with prior

Ninth Circuit case law") (citing <u>Pope v. Shalala</u>, 998 F.2d 473, 483 (7th Cir. 1993)) (because regulations were intended to incorporate prior Social Security Administration policy, they should be applied retroactively). The new SSR clarifies that "subjective symptom evaluation is not an examination of an individual's character." <u>Id.</u> In other words, "[t]he focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person." <u>Id.</u> at *10. Rather, "[a]djudicators must limit their evaluation to the individual's statements about his or her symptoms and the evidence in the record that is relevant to the individual's impairments." <u>Id.</u> Thus, "it is not sufficient for our adjudicators to make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered . . . .'" <u>Id.</u> at *9. Instead, the finding "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent review can assess how the adjudicator evaluated the individual's symptoms." <u>Id.</u>

In evaluating a claimant's subjective symptom testimony, an ALJ must consider the entire record and consider several factors, including the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; medications taken and their effectiveness; treatment other than medication; measures other than treatment used to relieve pain or other symptoms; and "other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms." 20 C.F.R. § 404.1529(c). If substantial evidence supports the ALJ's determination, it must be upheld, even if some of the reasons cited by the ALJ are not correct. <u>Carmickle v. Comm'r of Soc. Sec.</u>, 533 F.3d 1155, 1162 (9th Cir. 2008).

Plaintiff's principal symptom allegations related to mental impairments, including frequent severe episodes of anxiety, depression, and anger. The parties agree Plaintiff was hospitalized for four days in May 2011 following an incident where Plaintiff crashed her car into her husband's vehicle in a fit of anger. Tr. 392-98, 436-37. Plaintiff further alleged losing a job due to difficulties getting along with co-workers, and has reported feelings of depression and suicidal ideation to various treatment providers. See, e.g., tr. 412, 436-37, 444-48, 506, 512, 693. She also reported acute anxiety and feelings of panic to several providers and also at the hearing. See, e.g., tr. 450, 506, 511-12, 602, 632, 664, 703, 705. The administrative record reflects that Plaintiff has occasionally reported improvement regarding the severity of her psychiatric symptoms in the period from 2011 to 2013. See, e.g., tr. 486, 497, 503, 511, 584.

The ALJ discounted Plaintiff's "overall credibility" for several reasons. Tr. 29. First, the ALJ noted that in a psychological evaluation of May 2013 by David R. Truhn, Psy.D., Plaintiff's Minnesota Multiphasic Personality Inventory-2-RF ("MMPI") score was invalid due to over-reporting. Tr. 29, 552. The ALJ reasoned that, despite the invalid score, Dr. Truhn "did not indicate whether he viewed the balance of [Plaintiff's] reporting . . . with any degree of caution." Tr. 29. As such, the ALJ effectively impugned Plaintiff's mental symptoms overall.

The ALJ's approach to the invalid test score is erroneous on at least two counts. First, to the extent the ALJ found the test score evinced malingering without explicitly stating so, the finding is not supported. In order to make such a finding, the ALJ must point to "affirmative evidence that the claimant is malingering." Moisa v. Barnart, 367 F.3d 882, 885 (9th Cir. 2004). While the invalid MMPI score might be interpreted as evidence of malingering, none of the witnesses in this case, expert or otherwise, expressed the opinion that Plaintiff was malingering. See Gallant v. Heckler, 753 F.2d 1450, 1455 (9th Cir. 1984); Swenson v. Sullivan,

876 F.2d 683, 688 (9th Cir. 1989). Moreover, no one, including the ALJ, made an affirmative finding of malingering, and the Commissioner does not contest Plaintiff's assertion that no affirmative evidence of malingering is present in this case. See Pl.'s Br. 25 n.1; Def.'s Br. 4-5.

The ALJ's evaluation of the MMPI result also fails to adequately identify which symptom allegations were not credible. Even prior to the recent guidance provided by SSR 16-3p, ALJs have been required to provide specific, clear and convincing reasons to discredit symptom testimony.[2] Smolen, 80 F.3d at 1280; accord Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015). Importantly, "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (citations omitted). Rather than explaining what testimony the MMPI results impugned and why, the ALJ simply found Plaintiff's "overall credibility" was undermined. Tr. 29. The ALJ's approach has frequently been rejected by the Ninth Circuit as impermissibly isolating a specific quantum of evidence in order to discredit the entirety of a claimant's symptom testimony. Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007); accord Garrison v. Colvin, 775 F.3d 995, 1015 (9th Cir. 2012). Because the ALJ failed to adequately explain what testimony the MMPI result impugned, the finding should not be upheld.

The ALJ next discredited Plaintiff's testimony based on evidence of "dishonesty." Tr. 29. The ALJ surmised that Plaintiff was generally not credible based on her varying accounts of whether she performed work for her husband's company while receiving compensation, and her own admission she defrauded the IRS. Id. The ALJ's finding is unequivocally erroneous under

---

[2] Although the court finds that SSR 16-3p applies to the case at bar for the reasons provided supra, the court notes that for the reasons explained infra, ALJ's finding regarding the MMPI result would also be deficient under SSR 96-7p.

SSR 16-3p because it is premised solely upon Plaintiff's "overall character or character for truthfulness in the manner typically used during an adversarial court litigation." SSR 16-3p, at *10. Further, even under the rubric of SSR 96-7p, the rationale fails because the ALJ does not identify, with any degree of specificity, which of Plaintiff's symptom allegations her statements call into question. Reddick, 157 F.3d at 722; see also Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) ("ALJ must make a finding as to the credibility of claimant's statements about the symptoms and their functional effect . . . ."); SSR 96-7p, at *4 ("[T]he adjudicator must consider all of the evidence in the case record, including any statements by the individual or other persons concerning the individual's symptoms. The adjudicator must then make a finding on the credibility of the individual's *statements about symptoms* and their functional effects.") (emphasis added).

The Commissioner also argues that the ALJ's rationale was proper to the extent it impugned Plaintiff's inconsistent testimony about when she was employed by her husband's company, and if she was paid despite not performing any work. Def.'s Br. 5-6. Although inconsistent testimony is generally a valid reason to discredit symptom testimony, the testimony at issue must relate to specific symptoms – general findings are insufficient to meet the clear-and-convincing legal standard. Reddick, 157 F.3d at 722; Robbins, 466 F.3d at 883, SSR 16-3p, SSR 96-7p.

The Commissioner further argues the finding was valid to the extent Plaintiff alleged losing her job due to angry outbursts, but in so doing the Commissioner conflates the rationales the ALJ presented. Def.'s Br. 6. The ALJ did not find that Plaintiff alleged she lost her job with her husband's company due to her moodiness, nor did Plaintiff testify she lost that job due to moodiness. Tr. 29-30, 48-50. Rather, the ALJ impugned Plaintiff for her "dishonesty" regarding

her work for her husband's company, and separately for absence of proof that she "lost work in the past due to her moods." Id. Thus, because the court is constrained to review the findings set forth by the ALJ, the Commissioner's *post hoc* assertion is unavailing. Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014).

The ALJ further discredited Plaintiff because although her "[t]reatment records from South Lane [Mental Health] show depression complaints . . . treatment has been intermittent in frequency." Plaintiff assigns error, arguing that not only does the record reflect she has difficulties remembering instructions, but also none of the treatment notes at issue document willful noncompliance. Pl.'s Br. 26. Indeed, as Plaintiff asserts, she has been on and off of a wide variety of medications to address her mental impairments between 2007 and 2014, which have been variably diagnosed as: bipolar I disorder, PTSD, depression, anxiety, personality disorder, and panic disorder, while her symptoms have generally persisted with incidents of waxing and waning, particularly after May 2011. See, e.g., tr. 23, 392-401, 412-413, 421-22, 436-443, 465-66, 494, 497-98, 503, 506, 511-12, 554, 568, 583-610, 628, 631-34, 662, 683-88, 702-06. After May 2011, Plaintiff regularly attended mental health treatment appointments, up until the time of the hearing. Tr. 42-43, 436, 450-51, 583, 590, 692, 705-06.

The Commissioner argues that there was "little mention of mental health issues" in chart notes generated by Lyle Torguson, M.D. in 2012, and that Plaintiff "was doing better" from July 2012 to October 2013. Def.'s Br. 7 (citing tr. 27). However, the record reflects that Dr. Torguson diagnosed "severe PTSD, insomnia" and "possible comorbid bipolar disorder" in April 2012, explaining that her history shows highs and lows in mood, with associated ups and downs in concentration and memory. Tr. 448. In June 2012, Dr. Torguson noted that Plaintiff was "doing poorly," wished she had "better control of her anxiety and depression," and seemed "a bit

hypomanic." Tr. 506. In July 2012 her affect was noted to be much better (tr. 503), but by August 2012 Dr. Torguson reported Plaintiff was "despondent and depressed" and "on occasion close to tears" (tr. 500). She improved again in September 2012, and the doctor indicated her PTSD was "almost completely under control for the first time." Tr. 497. However, by November 2012, she again presented with flat affect, "and gets close to tears when she talks about the depression." Tr. 494. Dr. Torguson reported that Plaintiff was experiencing "atypical chest pain" from anxiety, and noted that antidepressants were ineffectual. Id. In December 2012, Dr. Torguson noted that the drug Trileptal was doing "fairly well" to treat her PTSD, but that antidepressants were not working. Tr. 487. As such, the ALJ's conclusory statement about Dr. Torguson's 2012 treatment for mental impairments is unsupported by the record. Rather than showing progressive improvement, the records from 2012 clearly reflect waxing and waning of symptoms.

The record of the period from January 2013 to October 2013 reflects similar waxing and waning, rather than an improvement trend. Although the Commissioner and the ALJ noted that Plaintiff reported panic attacks and anxiety to her therapist in July 2013 (tr. 605) but not to Dr. Torguson, the chart note corresponding to the July 17, 2013 clinical visit with the doctor described that "her PTSD is gradually worsening," her affect was anxious, her behavior restless, cognition was "impaired due to anxiety," and Plaintiff reported short term memory loss. Tr. 631-32; see Def.'s Br. 7. Thus, rather than illustrating that Plaintiff lacks credibility, comparing of the notes reveals fairly consistent symptoms.

In Garrison, the Ninth Circuit admonished: "we have emphasized [that] while discussing mental health issues, it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment." Garrison, 759 F.3d at 1018 (citing Holohan v. Massanari,

246 F.3d 1195, 1205 (9th Cir. 2001)). There, the court further noted, "[i]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." Id. at 1018 n.24. Considering the record as a whole, the court finds that Plaintiff's course of treatment for her constellation of mental issues is substantially similar to that evaluated by the Ninth Circuit in Garrison. As in Garrison, the ALJ in the instant case did not "chart a course of improvement" by describing Plaintiff's symptoms, course of treatment, and bouts of remission, but rather singled out a few periods of temporary improvement, and specific to this case, noted an absence of "angry outbursts" despite the persistence of other significant symptoms. Tr. 30. Further, even assuming the ALJ had properly established that Plaintiff's treatment was so infrequent as to discredit her symptom testimony, again, the ALJ failed to identify what testimony was less than credible. Reddick, 157 F.3d at 722, Robbins, 466 F.3d at 883, SSR 16-3p, SSR 96-7p. For these reasons, the ALJ's rationale is not clear-and-convincing.

The ALJ also impugned Plaintiff's credibility based on her reported activities of daily living ("ADLs"). ADLs may be used to discredit symptom testimony in two ways: (1) to illustrate a contradiction with previous testimony, or (2) to show the activities meet the threshold for transferable work skills. Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2009). Regarding mental impairments, the ALJ first found Plaintiff's symptom testimony was belied by her 2007 report of feeling less depressed, exercising, considering going back to work, and voluntarily (although temporarily) taking herself off Prozac. Tr. 26. However, Plaintiff's comments were made a year before the alleged onset date of disability, and as described in detail above, Plaintiff eventually resumed taking medication to address her mental health. The rational is not clear and convincing.

The Commissioner contends that contrary to Plaintiff's July 2012 statement that she has a difficult time getting along with people, she later indicated that she was "excited about

discussing volunteer opportunities and continued to enjoy occasional visits from members of a church." Def.'s Br. 6; tr. 608, 692-93. The Commissioner further notes Plaintiff enjoyed monthly visits from Jehovah's Witnesses, though it is not clear that the visits from "members of a church" are not merely the monthly visits by the Jehovah's Witnesses. In any case, brief social interactions with occasional visitors do not constitute clear-and-convincing evidence contradicting Plaintiff's stated difficulty *maintaining* healthy relationships. Tr. 323. In the instance where Plaintiff expressed interest in attending a social gathering or volunteer activity, the context was a brainstorming session led by her therapist to combat her feelings of depression. Tr. 692. On this record, there is no evidence Plaintiff actually attended a social gathering or performed volunteer activity thereafter, let alone that she felt comfortable or enjoyed any such activity. In fact, Plaintiff's therapist indicated Plaintiff was "hesitant" to go to her own church. Id. Again, the ALJ's findings are reminiscent of the singling-out of unfavorable evidence as discussed in Garrison; see Pl.'s Br. 7 (bipolar disorder characterized by presence of both depressive and hypomanic episodes) (citing DSM-IV[3]); see also Ghanim v. Colvin, 763 F.3d 1154, 1164 (9th Cir. 2014) (ALJ may not cherry-pick isolated instances of improved psychological symptoms when the record as a whole reflects longstanding mental impairments).

The ALJ also found Plaintiff's symptom allegations lacked credibility based on her ability to perform household chores, care for her pet dogs, drive, and walk on a treadmill. However, as the Ninth Circuit has long since established, the ability to perform minimal physical activities in a non-job setting often has little bearing on an individual's capacity to sustain regular employment in a competitive work setting. Molina, 674 F.3d at 1112-13 (One need not be relegated to vegetating in a dark room in order to be eligible for benefits.) (citations omitted).

---

[3] Diagnostic and Statistical Manual of Mental Disorders (4th ed. 2000), American Psychiatric Association.

Plaintiff freely and consistently reported her ability to perform the physical activities the ALJ described. The ALJ does not identify which symptom allegations her ability to perform the physical activities impugns, nor does the ALJ explain how the activities contradict Plaintiff's testimony. The clear-and-convincing standard is the highest in Social Security jurisprudence, and the ALJ's vague inferences simply do not meet the lofty legal threshold.

Last, the Commissioner argues that the ALJ "reasonably" concluded that objective evidence did not support Plaintiff's testimony. However, in describing the objective evidence, and as discussed above, the Commissioner disregards the Ninth Circuit's guidance in Garrison for evaluating waxing and waning symptoms of mental conditions. Moreover, where, as here, the ALJ does not provide other, valid reasons to discredit symptom testimony, citing an absence of objective evidentiary support is insufficient as a matter of law. Reddick, 157 F.3d at 722.

Because none of the ALJ's stated rationales for discrediting Plaintiff's symptom testimony met the requisite legal standard, they should not be upheld, nor should the ALJ's adverse overall credibility determination.

II.    Medical Evidence

Plaintiff assigns error to the ALJ's evaluation of examining psychologist Dr. Truhn. The ALJ is responsible for resolving conflicts in the medical record, including conflicting physicians' opinions. Carmickle, 533 F.3d at 1164. The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. Lester v. Chater, 81 F.3d at 830. A treating physician's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991). If,

however, a treating physician's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific, legitimate reasons" for discrediting the treating physician's opinion. Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983). Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with the medical records, inconsistency with a claimant's testimony, or inconsistency with a claimant's activities of daily living ("ADLs"). Tommasetti v. Astrue, 533 F.3d at 1035, 1040 (9th Cir. 2008). Because the Dr. Truhn's opinions were contradicted in part by examining psychologist Paula Belcher, Ph.D., the specific-and-legitimate legal standard is operative. Murray, 722 F.2d at 502.

Dr. Truhn performed a one-time examination of Plaintiff, reviewed a portion of the medical record, and produced a psychological evaluation report in May 2013. Tr. 545-56. Dr. Truhn administered a battery of psychological tests, and took an extensive history from Plaintiff. The doctor diagnosed chronic and severe PTSD, bipolar I disorder, panic disorder without agoraphobia, and personality disorder NOS, all conditions the ALJ found to be severe impairments at step two. See tr. 23. Dr. Truhn opined that Plaintiff had a GAF score of 41, which generally denotes "serious impairment in social, occupational, or school functioning." Garrison, 759 F.3d at 1002 n.4 (citing DSM-IV). Dr. Truhn explained that Plaintiff was capable of seeking and even obtaining employment for short periods of time, but due to manic or depressive episodes, or interpersonal conflict, her mental impairments would eventually prevent her from sustaining employment indefinitely. Tr. 554. Dr. Truhn felt Plaintiff's prognosis was poor, and recommended continued treatment with medication and therapy. Tr. 555.

The ALJ essentially adopted Dr. Truhn's diagnoses, but rejected his opinions: she accorded no weight to the doctor's GAF score, and purported to give no weight to the doctor's

opinion as to Plaintiff's ability to sustain work. See tr. 557-60. However, the ALJ indicated she accorded "less weight" to Dr. Truhn's opinion that Plaintiff lacked the capacity to understand, remember, and carry out simple instructions for at least two hours at a time. Tr. 558.

Plaintiff first argues that the ALI erred in disregarding the GAF score Dr. Truhn assigned. The ALJ included a lengthy footnote discussing GAF scores in general, explaining that the American Psychiatric Association no longer endorses GAF scores because of accuracy concerns, the GAF score does not necessarily represent functional limitations, its utility may be undermined where a claimant is not credible, and it does not correlate to the SSA's disability framework. Tr. 27-28 n.1. Specifically, the ALJ indicated she would not accord weight to Dr. Truhn's GAF assessment because it included "the impact of Axis III (medical) and Axis IV (socioeconomic) considerations" and was "not solely a measure of mental functioning." Tr. 28. Plaintiff argues there was no evidence that the doctor combined the Axis III and IV to arrive at the GAF. The Commissioner provides no direct response to Plaintiff's argument, other than to explain that should the court find the ALJ's stated reason invalid, the ALJ provided other reasons to generally disregard the GAF scores in the aforementioned footnote. Def.'s Br. 10; tr. 27 n.1.

Plaintiff contends there is no evidence Dr. Truhn erroneously formulated the GAF score because the DSM-IV explains that "[t]he GAF Scale is to be rated with respect only to psychological, social, and occupational functioning," and includes instructions not to include impairment due to physical or environmental limitations. Pl.'s Br. 17-18 (citing DSM-IV). Indeed, absent any indication within the text of Dr. Truhn's evaluation that he improperly assessed the GAF score or failed to evaluate the other test results, and absent any substantive response from the Commissioner, the ALJ's finding should not be sustained because it is not based on substantial evidence in the record.

Insofar as the Commissioner argues the ALJ provided sufficient reasons to disregard the GAF based on her footnote discussing GAF scores in general, the argument is not persuasive. As the Ninth Circuit explained in <u>Garrison</u>, the GAF score "is a rough estimate of an individual's psychological, social and occupational functioning used to reflect the individual's need for treatment." <u>Garrison</u>¸ 759 F.3d at 1002 n.4 (citing <u>Vargas v. Lambert</u>, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998). Even assuming the GAF score "is not the equivalent to a finding of disability" under the SSA regulations, neither the ALJ nor the Commissioner provided an adequate explanation of why the GAF assessment should be accorded "no weight." Tr. 28. An ALJ is to consider *all* relevant medical opinion evidence, and even if the GAF score is not a dispositive method of evaluating claimants applying for benefits under the Act, a very low score that is consistent with Dr. Truhn's psychological testing and opinion that Plaintiff's prognosis is poor is worthy of at least a degree of evidentiary weight. <u>See</u> <u>Garrison</u>, 750 F.3d 1002 n.4 ("Although GAF scores, standing alone, do not control determinations of whether a person's mental impairments rise to the level of a disability . . . they may be a useful measurement."); 20 C.F.R. § 404.1527(c) ("Regardless of its source, we will evaluate every medical opinion we receive."). Here, the ALJ's stated reason for completely disregarding Dr. Truhn's GAF assessment is not supported by substantial evidence. As such, the requisite legal standard is not met.

The ALJ also accorded no weight to Dr. Truhn's opinion that Plaintiff "is unable to maintain competitive employment because of severe mental health problems." Tr. 28, 554. The Commissioner defends the ALJ's assessment, citing the regulations for the proposition that medical opinions on issues reserved to the Commissioner are not entitled to controlling weight or special significance. 20 C.F.R. §§ 404.1512(b)(7), 404.1527(e)(1); Def.'s Br. 12. Plaintiff argues that the doctor's opinion was not conclusory, but rather an assessment of her likelihood of being

capable of maintaining gainful work. Pl.'s Br. 18 (citing <u>Hill v. Astrue</u>, 698 F.3d 1153, 1160 (9th Cir. 2012)). In <u>Hill</u>, the Ninth Circuit explained that it was not harmless error for an ALJ to disregard a doctor's opinion that the claimant would be unlikely to successfully maintain competitive employment, even though it was arguably an opinion on an issue reserved to the Commissioner. <u>Hill</u>, 698 F.3d at 1160. The court explained that the statement was probative because it was not conclusory, but rather "an assessment, based on objective medical evidence, of Hill's *likelihood* of being able to sustain full time employment given the many medical and mental impairments" at issue. <u>Id.</u> (emphasis in original).

Thus, the question for the court in the instant case is whether Dr. Truhn's opinion was appropriately accorded no weight because it was conclusory. In the context of Dr. Truhn's 15-pages of psychological evaluation, the court finds that it was not conclusory for the following reasons. First, Dr. Truhn's opinion was based on objective evidence garnered from a battery of standard psychological tests, as was the case in <u>Hill</u>. Although Dr. Truhn found Plaintiff's MMPI score was invalid, the other tests he administered, the WAIS IV[4], Trail-Making, WRAT-4[5], and MCMI-III[6], rendered valid results that were used to inform his opinions. Tr. 551-54. Indeed, it is notable that Dr. Truhn's conclusions that Plaintiff has marked difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence, and pace with regard to carrying out instructions, were adopted by agency medical expert ("ME") psychologist John B. Nance, Ph.D., whose opinion the ALJ accorded "great but not controlling weight."[7] Tr.

---

[4] Wechsler Adult Intelligence Scale – Fourth Edition.
[5] Wide Range Achievement Test – 4.
[6] Millon Clinical Multiaxial Inventory – III.
[7] The ALJ erroneously indicated Dr. Truhn is the only medical source "who concludes that Ms. Nelson lacks the capacity to understand, remember, and carry out simple instructions for at least two hours at a time." Tr. 28. In fact, Dr. Truhn indicated Plaintiff was precluded from carrying out simple instructions for 5% of a 7.5 hour workday. Tr. 557.

29, 685. Accordingly, assertions by the ALJ and Commissioner that Dr. Truhn's opinions should be wholly disregarded because of Plaintiff's invalid MMPI result are internally inconsistent with the ALJ's own conclusion that Dr. Nance's expert opinion was the most probative in the record.[8]

Second, although Dr. Truhn certainly indicated he did not believe Plaintiff would be able to maintain full time employment indefinitely, his opinion was more nuanced than a mere conclusion. Rather, the doctor explained that Plaintiff was probably capable of "seek[ing] out and possibly even gain[ing] employment for short periods of time." Tr. 554. That observation is consistent with the waxing and waning of disruptive symptoms evidence in the record as a whole, and for the period after May 2011 in particular. It also undercuts the Commissioner's argument that Dr. Truhn's opinion was tantamount to a "statement by a medical source that [Plaintiff] is 'disabled' or 'unable to work' does not mean that he or she will be found disabled." Def.'s Br. 12 (quoting 20 C.F.R. § 404.1527(e)(1)). Dr. Truhn's opinion that Plaintiff could seek or possibly obtain employment for a discrete period is not an unequivocal conclusion that Plaintiff is unable to work, but rather comparable to the opinion expressed in Hill: it is an assessment, supported by objective testing, a lengthy history, and a thorough analysis, and is largely consistent with the other opinions of record, including the opinion of Dr. Nance. Thus, although the ALJ was not required to fully adopt Dr. Truhn's opinion that Plaintiff would be unable to *maintain* employment even if she were able to *obtain* employment and therefore conclude Plaintiff was disabled under the Act, it was legal error to disregard his nuanced assessment entirely by according it "no weight." See SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996) ("[s]uch opinions on these issues must not be disregarded . . . [but] can never be entitled to

---

[8] The court further notes that despite the ALJ's rejection of Dr. Truhn's GAF assessment, Dr. Nance cited Plaintiff's various GAF scores (25, 43, 41), including the score assigned by Dr. Truhn, in support of his functional assessment which was accorded great weight by the ALJ. Tr. 29, 685.

controlling weight or given special significance"); <u>Hill</u>, 698 F.3d at 1159 ("[W]e must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'") (citation omitted).

Plaintiff also contests the weight accorded to Dr. Belcher's opinion, insofar as it was accorded more weight than Dr. Truhn's. The ALJ did not identify what weight she accorded Dr. Belcher's opinion, other than to say it was given less weight than that of Dr. Nance. Tr. 29. Thus, the ALJ failed to abide by 20 C.F.R. § 404.1527(e)(2)(ii), which requires that an ALJ "must explain in the decision the weight given to the opinions of a . . . psychological consultant" where, as here, a treating source opinion is not given controlling weight. Plaintiff further argues that Dr. Belcher's opinion was given inordinate weight because it was based largely on Plaintiff's self-reports which the ALJ deemed non-credible, was not based on objective psychometric testing as Dr. Truhn's was, and was not based on review of the full administrative record. Pl.'s Br. 20-21. For example, while Dr. Truhn and Dr. Nance opined that Plaintiff would have marked limitations in social functioning, Dr. Belcher concluded that Plaintiff had only mild to moderate limitations in social functioning. Tr. 558-59, 570, 685. Additionally, although Dr. Belcher did not feel that Plaintiff met the criteria for PTSD, the ALJ adopted the diagnoses of Dr. Truhn and Nance in finding PTSD was a severe impairment at step two. Tr. 23, 68, 554, 568, 684. For these reasons, the ALJ's overall assessment that Dr. Belcher's opinion was more probative than Dr. Truhn's is internally inconsistent because the ALJ accorded the most weight to Dr. Nance, who endorsed limitations that originated from Dr. Truhn. Further, to the extent the weight accorded to Dr. Belcher's opinion was based on the ALJ's erroneous credibility evaluation and erroneous evaluation of Dr. Truhn's opinion, the ALJ's assessment is further inconsistent with the record as a whole.

Similarly, the ALJ erred in assigning weight to the non-examining agency physicians who reviewed the record and rendered opinions. <u>See</u> tr. 30, 107-08, 119-21. Generally, non-examining physicians' opinions are entitled to the least weight, because their opinions are informed only by their review of the medical record. 20 C.F.R. § 404.1527(c)(1); <u>Garrison</u>, 759 F.3d at 1012 (citing <u>Ryan v. Comm'r of Soc. Sec. Admin.</u>, 157 F.3d 1194, 1198 (9th Cir. 2008)). Thus, when non-examining physicians provide opinions without the benefit reviewing the entire record, their ability to render an accurate medical opinion is greatly diminished, particularly compared to treating or examining physicians, who have the benefit of both reviewing the record and also an in-person interaction and examination of a claimant. As the regulations explain, "because non[-]examining sources have no examining or treating relationship with you, the weight we will give their medical opinions will depend on the degree to which they provide supporting explanations for their medical opinions." 20 C.F.R. § 404.1527(c)(3).

Here, the reviewing physicians rendered opinions in 2011 and 2012, more than a year prior to the comprehensive psychological examinations by Drs. Truhn and Belcher. <u>See</u> Tr. 108, 121. The ALJ accorded diminished weight to the opinions of Drs. Truhn and Belcher because they had not reviewed the entire record; however, even though the reviewing physicians also did not review the complete record, the ALJ declined to accord their opinions less weight. <u>See</u> 28-29, 30. Further, neither reviewing physician saw the testimony of medical expert Dr. Nance, who provided a very specific opinion regarding Plaintiff's supervisory needs, and opined Plaintiff would be likely to miss more than one day of work per month. <u>Compare</u> tr. 700 (Claimant would require a "supportive supervisor" who "is able to provide constructive criticism in a non-confrontational manner; who has sufficient skill to adapt to the personality of the supervisee; and

who is able to provide positive feedback when applicable.") to tr. 120 ("Clmt does not need special supervision but a supervisor aware of her depressive [symptoms].); 69-71.

Additionally, despite purporting to accord the reviewing physicians significant weight, the ALJ ultimately accorded the most weight to the opinion of Dr. Nance, who endorsed significantly more extensive mental limitations than the reviewing physicians. <u>See</u> tr. 69-70, 685 (moderate limitations maintaining concentration, persistence, and pace; marked limitations maintaining social functioning), 700. For all the foregoing reasons, the ALJ erred in weighing the opinions of the reviewing physicians.

III.    <u>Lay Witness Testimony</u>

Plaintiff assigns error to the ALJ's evaluation of the lay testimony of James Nelson, Plaintiff's husband. Lay witness testimony regarding the severity of a claimant's symptoms or how an impairment affects a claimant's ability to work is competent evidence that an ALJ must take into account. <u>Nguyen v. Chater</u>, 100 F.3d 1462, 1467 (9th Cir. 1996) (citing <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918-19 (9th Cir. 1993)). In order to reject such testimony, the ALJ must provide "reasons germane to each witness." <u>Lewis v. Apfel</u>, 236 F.3d 503, 511 (9th Cir. 2001). "Further, the reasons 'germane to each witness' must be specific." <u>Bruce v. Astrue</u>, 557 F.3d 1113, 1116 (9th Cir. 2009) (citation omitted). However, where the ALJ has provided clear and convincing reasons for rejecting the claimant's symptom testimony, and the lay witness has not described limitations beyond those alleged by the claimant, the failure to provide germane reasons for rejecting the lay testimony may be harmless error. <u>Molina</u>, 674 F.3d at 1122.

Mr. Nelson described Plaintiff's history of angry outbursts followed by "isolating" behavior, depression, mood swings, lack of meaningful personal relationships, problems with co-workers, and difficulty in following directions for taking her medications. Tr. 26, 309-16, 358-

62.. He also testified that Plaintiff has been fired from multiple jobs, which the ALJ found not-credible because "no outside corroboration was offered." Tr. 26. The Commissioner argues the ALJ appropriately rejected Mr. Nelson's testimony because "Plaintiff's acts of dishonesty regarding the reporting of earnings to the IRS . . . also involved her husband." Def.'s Br. 9-10. However, for the reasons described supra, the ALJ did not provide legally adequate rationales for rejecting Plaintiff's symptom allegations; therefore, the Commissioner's corollary argument also fails.

The record reflects that although Plaintiff did not recall having any angry outbursts in the workplace, her testimony and history as related by the examining psychologists was generally consistent with Mr. Nelson's insofar as she has consistently endorsed having difficulties with co-workers, in some cases leading to her termination. Tr. 565; see also tr. 70, 436, 545-46, 549-50, 685, 687, 700. Consistent with Mr. Nelson's testimony about Plaintiff's co-worker interaction problems in the workplace, Dr. Nance opined that Plaintiff would have marked limitations interacting with the public in a work setting, moderate limitations in working with co-workers, and would require a supportive supervisor who could provide non-confrontational constructive criticism, adapt to her mood disruptions, and provide positive feedback. Tr. 70-71, 700. Further, it was error for the ALJ to reject Mr. Nelson's testimony because it could not be corroborated; lay witness testimony is often most valuable where it describes the severity of a claimant's symptoms where those symptoms are not fully supported by objective medical evidence. Bruce, 557 F.3d at 1116 (citing Smolen, 80 F.3d at 1289). The ALJ's rejection of Mr. Nelson's competent testimony should not be upheld.

IV.     RFC Formulation and Step Five Hypothetical Questions

Plaintiff argues that the ALJ formulated an RFC that was inconsistent with Dr. Nance's findings, and that the flawed RFC led to further error in soliciting testimony from the VE at step five. Indeed, Dr. Nance opined that Plaintiff has marked difficulties in social functioning, would require a "supportive" supervisor in order to maintain gainful employment, and would miss more than one day per month due to her mental impairments. Tr. 69-71, 685, 700. The Commissioner contends that despite any discrepancies, the key issue is that Dr. Nance believed Plaintiff retained the capacity to work, and that "in his final assessment, Dr. Nance did not include any limitation regarding absenteeism." Tr. 17. While the Commissioner correctly notes that Dr. Nance did not indicate in his final assessment that Plaintiff would miss more than one day per month, there is no indication Dr. Nance ever revoked the absenteeism limitation: the second assessment is completely silent on the issue. See tr. 683-87. The ALJ did not make any allowance for absenteeism in the RFC. In response to Plaintiff's counsel at the second hearing, the VE indicated that missing more than one day per month would not be permitted on an ongoing basis. Tr. 57-58.

While the ALJ was not required to include every limitation set forth by Dr. Nance, the ALJ is required to address any conflict between a medical opinion and the RFC assessment. SSR 96-8p, 2017 WL 374184, at *7. The ALJ wholly failed to address Dr. Nance's opinion that Plaintiff would miss more than one workday per month on average, despite according great weight to the doctor's opinion. The omission of any discussion of the potentially dispositive fact was error.

Additionally, although the ALJ purported to adopt Dr. Nance's opinion that Plaintiff would require a supportive supervisor, when the VE expressed uncertainty about the definition of

"supportive supervisor," the ALJ rephrased the hypothetical question, asking instead what percentage of supervisors provide "quality supervision." Tr. 54. Thus, it appears the ALJ felt Dr. Nance's requirement for a supportive supervisor was no more than a "decent supervisor," or "quality supervisor." <u>See</u> tr. 56 ("[W]hen I see that phrase [supportive supervisor] I assume something more than just being a decent supervisor which is what . . . [Dr. Nance's] definition provided."). The ALJ further distinguished Dr. Nance's supervisory limitation from that required in a "sheltered" work setting, and the VE appeared to agree that Dr. Nance's "supportive supervisor" definition would not entail the extent of supervision required in a sheltered setting. Tr. 57-58; <u>see</u> Def.'s Br. 19-20.

The ALJ's RFC was also premised on the erroneous adverse credibility findings of Plaintiff and the lay witness, the erroneous rejection of Dr. Truhn's medical source opinion, and on the erroneous decision to give the non-examining physicians' opinions greater weight than examining source opinions. Had the ALJ properly evaluated the foregoing evidence, the RFC may have been substantially different, which would further impact the questions to the VE at steps four and five. Accordingly, the RFC was not based on substantial evidence, and should not be upheld.

V.    <u>Remand</u>

Based on the legal errors described above, this case requires remand. Plaintiff contends that the case should be remanded for payment of benefits. Accordingly, the court must undertake a four-part inquiry to determine the proper disposition of this case. First, for the reasons described herein, the court concludes that the ALJ failed to provide sufficient reasons for rejecting competent testimonial [and/or medical] evidence. <u>Garrison</u>, 759 F.3d at 1020.

Second, the court must determine that "the record has been fully developed and further administrative proceedings would serve no useful purpose." Id. For example, "if the record raises crucial questions as to the extent of a claimant's impairment given inconsistences between his testimony and the medical evidence," the issues should be resolved by an ALJ in further proceedings. Treichler, 775 F.3d at 1105. Because "[t]he touchstone for an award of benefits is the existence of a disability" rather than an ALJ's error, the court must assess whether outstanding issues remain *before* considering whether to credit erroneously rejected evidence as a matter of law. Brown-Hunter, 806 F.3d at 495 (citations omitted).

Third, where there are no outstanding issues warranting further proceedings, the court must determine whether, "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." Garrison, 759 F.3d at 1021. Finally, even if all the requirements are met, the court may nevertheless remand "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled" within the meaning of the Act, such as when there are inconsistencies between testimony and the medical record, or if "the government has pointed to evidence in the record that the ALJ overlooked" and explained how that evidence belies disability. Dominguez v. Colvin, 808 F.3d 403, 407-08 (9th Cir. 2015) (quoting Burrell v. Colvin, 775 F.3d 1133, 1141 (9th Cir. 2014)) (internal brackets and quotation marks omitted).

Having determined the first part of the inquiry is satisfied, the court must next determine if the record has been fully developed and whether further proceedings would be useful. On this record, there are a number of factual issues that remain unresolved. Foremost, there is little objective evidence of ongoing disability prior to May 2011, despite Plaintiff's allegation of a December 25, 2008 onset. Indeed, as the ALJ noted, Plaintiff indicated she worked as late as

March 6, 2012. Tr. 352. However, after Plaintiff's decompensation episode in May 2011, the record is much more complete, as Plaintiff received fairly regular treatment for her mental impairments. Further, the examining and detailed medical source assessments are generally focused on the period from May 2011 until the time of their examinations: Linda Beal Blandy, LCSW in July 2011; Craig Nielson, MSW, QMHP in July 2012 and July 2013; Dr. Truhn in May 2013; and Dr. Belcher in July 2013. See, e.g., tr. 436-439, 563-568, 602-605, 606-610. Similarly, Dr. Nance's evaluations focused primarily on the time period after May 2011 in during his ME testimony of October 2013 and April 2014. Tr. 66-73, 683-88, 700. Dr. Nance's testimony that Plaintiff is likely to miss more than one day per month due to her mental symptoms otherwise establishes disability, at least as of October 2013. Because the record is incomplete, the court does not reach the question of whether Plaintiff would be found disabled if erroneously discredited evidence were credited as true, or whether serious doubt remains as to Plaintiff's disability status.

Additional proceedings will allow an ALJ to reevaluate the erroneously rejected testimony of Plaintiff and Mr. Nelson, and solicit additional testimony as to the onset and severity of symptoms from December 2008. On remand, the ALJ should also reevaluate Dr. Truhn's examination report to determine whether it is consistent with the record as a whole, and if applicable, provide legally sufficient reasons to reject the report's various findings. If possible, the ALJ should re-contact Dr. Nance for clarification on his comment as to the number of days Plaintiff would likely miss per month due to symptoms, and when Plaintiff's symptoms began impacting absenteeism to that degree. Additionally, Dr. Nance could further clarify whether a "quality supervisor" as defined by the ALJ is sufficient to meet Plaintiff's supervisory needs. If Dr. Nance is not available, the ALJ should endeavor to solicit testimony from another mental

health ME. Dr. Nance or another qualified ME may also be able to provide expert testimony regarding the impact, if any, of the invalid MMPI result on any of the other test results obtained by Dr. Truhn. Finally, because SSR 16-3p became agency policy in March 2016, Plaintiff's prior testimony, and any additional symptom testimony proffered on rehearing, should be evaluated according to the standards described therein.

## Conclusion

For the reasons discussed above, the Commissioner's ultimate decision was not based on substantial evidence and included harmful legal error. Accordingly, the Commissioner's decision should be REVERSED and this case REMANDED for further proceedings consistent with this Findings and Recommendation. 42 U.S.C. § 405(g).

## Scheduling Order

This Findings and Recommendation will be referred to a district judge. Objections, if any, are due May 26, 2017. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.


DATED this 9th day of May, 2017.


                        /s/ John Jelderks
                        John Jelderks
                        U.S. Magistrate Judge